IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

TAMI LAYNE STARCHER,

      Plaintiff,

v.                                          CASE NO. 6:09-cv-00580

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


PROPOSED FINDINGS AND RECOMMENDATION

    This is an action seeking review of the final decision of the
Commissioner of Social Security denying the Plaintiff's application
for disability insurance benefits ("DIB") under Title II of the
Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred
to this United States Magistrate Judge by standing order to
consider the pleadings and evidence, and to submit proposed
findings of fact and recommendation for disposition, all pursuant
to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court
are briefs in support of judgment on the pleadings.

    Plaintiff, Tami Layne Starcher (hereinafter referred to as
"Claimant"), filed an application for DIB on June 6, 2005, alleging
disability as of August 15, 1995, due to manic depression, bipolar,
and restless leg syndrome.  (Tr. at 16, 67-71, 77-86, 96-99.)  The
claim was denied initially and upon reconsideration.  (Tr. at 16,
47-48, 51-53.)  On March 7, 2006, Claimant requested a hearing

before an Administrative Law Judge ("ALJ").  (Tr. at 45.)  The hearing was held on March 29, 2007, before the Honorable James P. Toschi.  (Tr. at 29, 320-335.)  By decision dated April 20, 2007, the ALJ determined that Claimant was entitled to benefits for the period beginning on August 15, 1995 and ending on August 21, 1997.  (Tr. at 16-26.)  The ALJ's decision became the final decision of the Commissioner on March 27, 2009, when the Appeals Council denied Claimant's request for review.  (Tr. at 5-8.)  On May 26, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers

2

from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f)(2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at

19.)   Under  the  second  inquiry,  the  ALJ  found  that  Claimant

suffered  from  the  severe  impairment  of  major  depression  for  the

period  of  August  15,  1995  through  August  20,  1997.  (Tr.  at  19-20.)

At  the  third  inquiry,  the  ALJ  concluded  that  Claimant's  impairment

did  not  meet  or  equal  the  level  of  severity  of  any  listing  in

Appendix  1  from  August  15,  1995  through  August  20,  1997.  (Tr.  at

20-21.)  The  ALJ  then  found  that  Claimant  had  a  residual  functional

capacity  for  all  exertional  levels,  but  would  have  been  unreliable

in  attendance  and  the  performance  of  tasks  as  a  result  of  the

depression.  (Tr.  at  21-22.)  As  a  result,  Claimant  was  found  to  be

unable  to  perform  any  of  her  past  relevant  work  from  August  15,

1995  through  August  20,  1997.  (Tr.  at  22-23.)  Nevertheless,  the

ALJ  concluded  that  Claimant  could  perform  jobs  which  exist  in

significant  numbers  in  the  national  economy  beginning  August  21,

1997  through  June  20,  2000,  her  date  last  insured.  (Tr.  at  23-26.)

On  this  basis,  benefits  were  denied  for  the  period  of  time

beginning  August  21,  1997  through  June  30,  2000,  Claimant's  date

last  insured.  (Tr.  at  26.)

Scope of Review

The  sole  issue  before  this  court  is  whether  the  final  decision

of  the  Commissioner  denying  the  claim  is  supported  by  substantial

evidence.   In  Blalock v. Richardson,  substantial  evidence  was

defined  as

> "evidence  which  a  reasoning  mind  would  accept
> as  sufficient  to  support  a  particular

4

conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was 48 years old at the time of the administrative hearing. (Tr. at 22, 320.) She has a high school education. (Tr. at 324.) In the past, she worked at a Rite Aid warehouse, at a health food store, at Target, and as a dry cleaning presser. (Tr. at 301, 332.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below. It is noted that Claimant's DIB insured status expired on June 30, 2000.

5

On September 11, 1995, Claimant was brought to the Virginia Baptist Hospital emergency room (ER) by her husband. She was diagnosed with Major Depression and discharged on September 14, 1995. (Tr. at 129-35.) In a profile report dated September 11, 1995, Daryl Yoder, M.D. wrote: "She apparently had told her husband that she "had it [with] everything"... She denied that she wanted to commit suicide and has not had major thoughts about death but yet she states that she simply doesn't want to go on living." (Tr. at 133.)

On September 14, 1995, Dr. Yoder stated in the discharge summary: "She was started on Paxil 20 mg every morning, participated in group psychotherapy, occupational therapy, and individual therapy. She had a dramatic response to treatment, with considerable improvement of affect, improvement in decision making, and self-esteem...Prognosis: Considered to be good." (Tr. at 131.)

Notes indicate Dr. Yoder treated Claimant during eight half-hour sessions on September 29, 1995, October 9, 1995, October 18, 1995, October 30, 1995, November 13, 1995, December 14, 1995, January 22, 1996, and February 14, 1996. (Tr. at 229-32.) In the final note, he writes:

> Tami tells me that this will be her last visit here, as they will be moving in the next two weeks or so to Richmond. I had her sign a release form to communicate in the future with the physicians at the Fort Lee Medical Center... She was briefly tearful, as she admitted that she was not really terribly excited about moving. This is an advancement for her husband, but she is tired of moving herself. I proposed that she increase the Prozac

6

to 40 mg every morning, and increase the Klonopin to 0.5
mg tid.  She also requested some Dalmane, and I agreed to
do that.   Hopefully things will go well for her, but
clearly she is struggling very hard.

(Tr. at 229.)

Progress notes indicate Claimant had appointments at Virginia
South Psychiatric & Family Services with Kamala Agarwal, M.D. on
July 26, 1996, August 7, 1996, and August 14, 1996.  Only the July
26, 1996 involved physician contact, the two August dates appear to
be for prescription requests from Claimant.  (Tr. at 218.)

On August 21, 1996, Claimant was admitted voluntarily to John
Randolph Hospital for symptoms related to depression.  She was
discharged on August 27, 1996.  (Tr. at 136-213.)  An admission
form notes her to be 5' tall with a weight of 127 pounds.  (Tr. at
150.)

A note dated August 26, 1996 from Claimant's individual
therapy notes:

Tami...states "I just realized I'm being detoxed from my
meds and I feel like a druggie."  Stated she would never
use drugs and resents being addicted.   Explored the
difference between being addicted to street drugs vs.
prescribed meds.  Also explored the fact that she is not
addicted and is here to safely take off meds and allow
her a safe environment to test new coping skills to
handle depression.

(Tr. at 160.)

On August 27, 1996, Dr. Agarwal stated in a discharge summary:

The patient...acknowledged using more medication than
prescribed and would become very sedated with slurred
speech and appeared to be unable to function.  She has
been on Klonopin, Prozac and taking something for her

7

headache off and on.  She also takes Fioricet and nasal
sprays... During her stay, Tammy was able to share her
past experience of sexual abuse and rape and the impact
it has had on her ability to develop closeness with
relationships.  Tammy (sic) was slowly weaned off her
medications and as she did so, her affect seemed to
brighten significantly and mood improved. She stated she
felt as if she were a "drug addict" and that this really
had effected her self-esteem.  She did talk about
continuous nightmares, but was sleeping better in between
dreams.  At the time of discharge, she was stating she
was feeling much better, no suicidal ideations and less
depression...Prognosis: Fair.

(Tr. at 138.)

     Progress notes indicate Claimant had appointments at Virginia

South Psychiatric & Family Services with Dr. Agarwal on October 11,

1996, October 25, 1996, November 8, 1996, November 22, 1996,

January 3, 1997, January 31, 1997, April 28, 1997, and August 20,

1997. (Tr. at 214-18.) Although the handwritten notes are largely

illegible, the final note dated August 20, 1997 clearly states: "Pt

[patient] is feeling much better.  No mood swings.  Stable.  No

hallucinations...She spends great deal of time with computer."

Evidence after expiration of DIB insured status (June 30, 2000):

     Psychotherapy   treatment   notes   indicate   Claimant   had

appointments at Penn Valley Counseling Associates with Ketan Patel,

M.D. on April 27, 2004, June 29, 2004, September 22, 2004, and

November 23, 2004. (Tr. at 220-225, 289-90.)   Although the

handwritten notes are largely illegible, the final two notes dated

September 22, 2004 and November 23, 2004 clearly state: "Pt

[patient] on time.  Reports doing well.  Less depressed.  Not

suicidal." (Tr. at 220-21.) The initial intake dated April 27, 2004 states Claimant "was referred for medication management." (Tr. at 223.)

Medical records indicate Claimant was treated by Mary Tobkin, M.D., internal medicine, on four occasions from March 15, 2005 to June 15, 2005 for complaints of left wrist pain, increased blood pressure, migraines, restless leg syndrome, bipolar disorder, gastroesophageal reflux disease [GERD], abdominal pain, rectal bleeding, and chest pain. (Tr. at 234-49.)

On May 23, 2005, Philip M. Coff, M.D. wrote that Claimant had been referred to him for a history of constipation. He noted:

> She takes iron for restless leg syndrome... She tells me that C.T. of the abdomen in October was normal...The patient weighed 207 pounds. There was no adenopathy or jaundice. The skin and mucous membranes were normal. The chest was clear and the heart regular without gallop or murmur. The abdomen was soft with mild lower midline tenderness but without masses. The liver was 10 cm in span without splenomegaly. The extremities were normal and the neurological examination was normal. Colonoscopy has been scheduled for further evaluation of the patient's rectal bleeding.

(Tr. at 226.)

The record includes a letter from the Rehabilitation Services Commission, Bureau of Disability Determination to Johns Hopkins Hospital, Baltimore, Maryland, dated July 14, 2005. The letter states: "The claimant reports being treated in your facility on the dates listed above [all 1995 to present] and your records are needed to adjudicate the disability claim." (Tr. at 128.) The

9

letter has this notation at the bottom of the page: "No encounters for this patient." (Tr. at 128.)

On August 22, 2005, Roslyn Wolberg, Ph.D., wrote:

> Tami presents as an individual who has suffered a long history of depression, since grade school.  In part this depression was related to sexual molestation by a cousin... Tami did not show extreme mood changes while being seen at my practice.  She did express a great deal of anxiety, social anxiety, and mild depression.  She has the ability to make friends, as she did with a neighbor, especially when she feels useful in the relationship.  Overall, her diagnosis would be post-traumatic stress disorder, bipolar disorder, social anxiety disorder.  Tami was seen seven times between 2-15-05 and 6-16-05 and has been discontinued in this practice due to her moving.

(Tr. at 250.)

On August 29, 2005, a State agency medical source completed a Psychiatric Review Technique form.  (Tr. at 252-65.)  The evaluator, Alice Chambly, stated that the "Assessment is from: 02-01-2005 to Present."  (Tr. at 252.) She found Claimant meets Listing 12.06 in the categories of affective disorders and anxiety-related disorders.  (Tr. at 252.) She found Claimant had a moderate degree of limitation in restrictions of activities of daily living and marked difficulties in maintaining social functioning and concentration, persistence or pace.  She found one or two episodes of decompensation, each of extended duration.  (Tr. at 262.)

On August 29, 2005, a State agency medical source completed a Psychiatric Review Technique form.  (Tr. at 268-81.)  The evaluator, Alice Chambly, stated that the "Assessment is from: 08-01-1995 to 01/31/05."  (Tr. at 252.) She found she had

10

"Insufficient Evidence" to make a medical disposition.  (Tr. at 268.)  This review was affirmed on February 3, 2006 by Melanie Bryton, Ph.D.  (Tr. at 268.)  Dr. Chambly made these additional notes: "Claimant alleging onset of disability 8/95.  Although she did briefly require hospitalization at that time and additional hospitalization occurred the following year, overall the medical evidence is insufficient to establish ongoing disability from AOD [alcohol and other drugs]."  (Tr. at 280.)

On two occasions, October 25, 2005 and October 10, 2006, Claimant was seen by Douglas Carr, M.D. and provided with refill prescriptions for eight drugs related to treatment for depression, restless legs, and allergic rhinitis.  (Tr. at 282-85.)

On February 1, 2006, J. Jeffrey McElroy, M.D., stated that Claimant was being evaluated for numbness and tingling in her left wrist, which was diagnosed as left carpal tunnel syndrome.  He recommended that Claimant undergo an electromyography nerve conduction study.  (Tr. at 266.)

On April 13, 2006, Claimant underwent an emergency cardiac catheterization at St. Joseph's Hospital, following an exercise stress nuclear test.  (Tr. at 291-95.)  The coronary artery analysis revealed: "1. Left main artery - normal.  2.  Left anterior descending artery - normal.  Diagonal arteries normal.  3. Left circumflex artery - normal.  Marginal arteries are normal.  4. Right coronary artery - normal, dominant vessel."  (Tr. at 295.)

11

On February 28, 2007, John R. Atkinson, Jr., M.A., provided a mental status examination with attached questionnaires for Claimant's representative.  (Tr. at 296-313.)  He opined:

> SUBJECTIVE SYMPTOMS:
> Depression, anxiety, hallucinations, paranoid attitudes, sleep problems, hypomania, suicidal ideation, and chronic anger.
>
> OBJECTIVE FINDINGS:
> The patient is a 48-year-old female showing a long history of disturbed thoughts and emotions, who is quite obsessive compulsive and has a mood disorder and there are also multiple treatment and hospitalizations in her history.   This is suggestive of a big time character neurosis and there may be some element of control of others or attention seeking at  an  unconscious  level.
>
> The patient shows a mixture of borderline personality traits with the emotional instability associated with Borderline Personality Disorder, including depression, hypomania and anger but her "vegetable soup" pathologies make her difficult to treat.   Probably as soon as one problem is addressed, her symptoms shift somewhere else and this syndrome used to be called "Pseudoneurotic Schizophrenia."   It is noted that the patient does complain of hallucinations and paranoid ideation.   Her diagnosis sort of defies any kind of simple description as in the case of "shotgun" pathology.
>
> DIAGNOSIS:
> Axis I    296.90    Mood Disorder - NOS
>             300.00    Anxiety Disorder - NOS
> Axis II   301.83    Borderline Personality Disorder
> Axis III            See Medical Reports
> Axis IV             No Acute Event Relevant to Disorder
> Axis V              GAF  =  45,  Serious  to Major Impairment, Current and Past Year...
>
> PROGNOSIS:
> Guarded, disorders persist despite repeated treatments.

(Tr. at 304.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to consider the combined effects of Claimant's impairments and did not assign the proper degree of credibility to Claimant's testimony and other evidence of record in concluding she had no medical evidence of impairment after August 20, 1997 through June 30, 2000, her date last insured; (2) the ALJ failed to follow SSR 83-20, by not obtaining evidence from a medical expert to clarify the nature and severity of the claimant's impairment; and (3) the ALJ failed to give proper weight to the opinions of the reviewing state agency psychologist Alice Chamby and examining psychologist John R. Atkinson.  (Pl.'s Br. at 2-9.)

The Commissioner argues that the ALJ Decision is supported by substantial evidence because (1) there was no evidence of record after August 20, 1997 through June 30, 2000, that Claimant sought any mental health treatment and it is Claimant's burden of proof to produce evidence of disability by the date of last insured; and (2) Claimant's argument that the ALJ should rely on opinions of reviewing state agency psychologist Alice Chamby and examining psychologist John R. Atkinson is without merit because these opinions were offered five or more years after her date of last insured. (Def.'s Br. at 7-10.)  The Commissioner states that if Claimant's condition deteriorated after her date last insured, a

remedy may exist in filing for supplemental security income benefits, where there is no date last insured requirement. (Def.'s Br. at 7.)

Combination of Impairments/Credibility

Claimant asserts that the ALJ failed to consider the combination of her impairments and to give proper weight to her testimony and other evidence of record in concluding she had no medical evidence of impairment after August 20, 1997 through June 30, 2000, her date last insured. Specifically, Claimant argues:

> The Decision does not give proper consideration to the combined effects of Ms. Starcher's impairments as they equal in severity the listed impairments at 12.06, thereby warranting a finding of disabled. The ALJ found that the claimant was disabled from August 15, 1995 through August 20, 1997...
>
> Additionally, the ALJ found "there is no medical evidence of record after August 20, 1997 through June 30, 2000, her date last insured that reflect the claimant was seeking any mental health treatment, which indicates an improvement in her mental condition" (Transcript pg. 23). The ALJ failed to comply with SSR 97-6p in making this determination...The claimant, as well as the claimant's attorney testified that the claimant did in fact continue to seek treatment during that period, however, the records were lost or unobtainable (Transcript pg. 326). The claimant testified that she sought treatment consistently since 1995, and that both she and her attorney had attempted to retrieve the records (Transcript pg. 326). The claimant's husband is in the military, and therefore the claimant and he move quite frequently (Transcript pg. 326). The claimant's attorney testified that the facilities reported that the records were either "purged" or "lost" (Transcript pg. 326)... The ALJ erred in basing his decision on the fact that the claimant did not have treatment records for a gap of time from 1999-2004 (Transcript pg. 23).
>
> A state agency reviewing psychologist found, as of 2005,

14

> Mrs. Starcher met Listing 12.06 (Transcript pg. 252).
> This supports the argument that the ALJ's finding that
> claimant was only disabled for two year is unreasonable.
> It is completely illogical to think the claimant was
> disabled based upon her mental health impairments and
> headaches for two years, improved for seven years, and
> then became disabled again based upon the same
> impairments... the ALJ failed to follow the "slight
> abnormality" rule based on SSR 96-3p.

(Pl.'s Br. at 2-5.)

The Commissioner asserts that the ALJ correctly noted that

there was no evidence of record after August 20, 1997 through June

30, 2000, that Claimant was seeking any mental health treatment:

> It is well settled that it is Plaintiff's burden of proof
> to produce evidence of disability by the date last
> insured.  The Social Security Act places the burden of
> proof on the Plaintiff to produce evidence of disability.
> See 42 U.S.C. §423(d)(5)(A)... 20 C.F.R. §404.1512(c)...
> Therefore, both the Act and regulations support the ALJ's
> finding... The Act and the precedential cases
> interpreting the Act establish a bright line with respect
> to a DIB claimant's burden to prove disability prior to
> the expiration of the claimant's insured status.  See
> Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005)
> (requiring proof of disability prior to the expiration of
> her insured status); and Kasey v. Sullivan, 3 F.3d 74, 77
> n. 3 (4th Cir. 1993).

(Def.'s Br. at 8-9.)

The ALJ found that from August 15, 1995 through August 20,

1997, the period during which Claimant was determined to be

disabled, the claimant did not have an impairment or combination of

impairments that met or medically equaled an impairment listed in

20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d)).

The ALJ found:

> There are insufficient findings on both examination and

diagnostic testing to confirm the presence of a condition that meets or equals the criteria of the listings of impairments.  The claimant's major depression has been evaluated under Section 12. 00, which requires a severity that satisfies both the "A" and "B", or "C" criteria.

The ALJ concludes that in regard to the "B" criteria of the claimant's major depression during the closed period of disability, the claimant would have had moderate restrictions of activities of daily living... The claimant had moderate difficulties in social functioning... The claimant had moderate difficulties in maintaining concentration, persistence or pace... The claimant had two episodes of decompensation of extended duration as evidenced by two psychiatric hospitalizations (Exhibits 2-F and 3-F).  The medical evidence does not reflect the presence of "C" criteria.  Therefore, the evidence reveals that there is no record of any treating or examining physicians or psychologists that have identified findings equivalent in severity to the criteria of the listings of impairments...

As for the opinion evidence, on August 29, 2005, the reviewing state agency psychologists who reviewed the medical evidence at the initial determination level determined that the claimant's mental impairment was at the severity to meet the criteria of Section 12.06 of the listings of impairments.  The reviewing psychologist determined that the claimant would have marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace.  However, the evaluator assessed the claimant for the period February 1, 2005 through the present (Exhibit 10-F).  Therefore, the undersigned rejects this opinion, because it is a determination relating to the period after the claimant's date last insured of June 30, 2000 (SSR 96-6p).

The undersigned has considered the reviewing state agency psychologists who reviewed the medical evidence at the reconsideration determination level and determined that during the period August 1, 1995 through January 31, 2005, the claimant had insufficient evidence to make a disability determination (Exhibit 12-F).  However, in giving the claimant the benefit of the doubt, the undersigned concludes that the medical evidence of record supports a severe mental impairment during the period August 15, 1995 through August 20, 1997, but not

16

thereafter.

(Tr. at 20-22.)

The ALJ further found that medical improvement occurred as of August 21, 1997 (20 C.F.R. 404.1594(b)(1):

> Clinical progress notes reflect that on August 20, 1997, the claimant reported that she was feeling "much" better. She was no longer experiencing mood swings. She was not suicidal and was not having any visual or auditory hallucinations (Exhibit 4-F). Further, the claimant testified that her depressive symptoms were much worse during 1995 and 1996. The claimant reported on August 20, 1997, that she was spending most of the day on the computer (Exhibit 4-F). Additionally, there is no medical evidence of record after August 20, 1007 through June 30, 2000, her date last insured that reflect the claimant was seeking any mental health treatment, which dictates an improvement in her mental condition.

(Tr. at 23.)

The Social Security regulations provide,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 404.1523 (2006). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in

17

isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity.  Id.  The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed.  DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Regarding Claimant's credibility, the ALJ made these findings:

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible beginning on August 21, 1997 through June 30, 2000, her date last insured (SSR 96-7p).

The claimant's allegation that her depression has continued to be severe, is not supported by the medical evidence after August 21, 1997 through June 30, 2000, her date last insured.  The claimant stated that she was in treatment during 1999, but there were no medical records in the file to substantiate this allegation.  The claimant testified that she had anorexia and had poor self-esteem, but this is also not supported by the medical evidence after August 21, 1997 through June 30, 2000.

Subsequent to June 30, 2000, the claimant's date last insured, the medical evidence reflects that the claimant received psychiatric treatment in April 2004 through October 2006, for symptoms of depression and bipolar disorder (Exhibits 5-F, 9-F, 13-F, and 15-F).  However, the undersigned concludes that this treatment has occurred several years beyond her date last insured. Therefore, this medical evidence falls outside the scope of evaluation to determine disability in the claimant's case.

Accordingly, the ALJ finds that the claimant's mental condition during the period August 21, 1997 through June 30, 2000, was not severe and would result in no restriction of activities of daily living; no difficulties in maintaining concentration, persistence,

or pace; and no episodes of decompensation. Furthermore, the medical evidence during this period did not establish the presence of the "C" criteria.

The physical medical evidence of record reveals that the claimant has received treatment for chest pain, restless leg syndrome, and carpal tunnel syndrome during the period 2005 and 2006 (Exhibits 8-F, 11-F, 13-F, and 16-F). However, the claimant's treatment for her physical problems was after the date last insured and not relevant to the period in question. Therefore, the undersigned concludes that the claimant did not have a severe physical impairment during the period August 21, 1997 through June 30, 2000.

(Tr. at 25-26.)

The ALJ also made these findings regarding Claimant's complaints of migraine headaches:

The claimant alleges migraine headaches that cause her to lose her vision and become nauseated. Treatment notes reflect that during the closed period of disability, the claimant complained of headaches, but when she was compliant with her prescribed medications, her headaches were well controlled. On September 11, 1995, an examiner noted that the claimant had no physical abnormalities (Exhibit 2-F). Further, on September 29, 1995, the claimant stated that she was receiving some relief from her medications (Exhibit 7-F). The claimant's treatment history does not substantiate the alleged frequency, severity, and duration of headaches during the closed period of disability. Therefore, the undersigned concludes that the claimant's alleged headaches have no more than a minimal limitation on her ability to perform basic work-related activities and is a non-severe impairment prior to June 30, 2000, her date last insured.

(Tr. at 20.)

Social Security Ruling 96-7p clarifies when the evaluation of symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional

effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements. The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:

- The medical signs and laboratory findings;

- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

The ALJ determined that Claimant had medically determinable impairments that could cause her alleged symptoms through August 20, 1997. (Tr. at 25.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location,

20

duration, frequency, and intensity of Claimant's pain and other symptoms, including Claimant's migraine headache symptoms, precipitating and aggravating factors, Claimant's medication and side effects, and treatment other than medication. (Tr. at 19-26.) The ALJ explained his reasons for finding Claimant not entirely credible, including the objective findings, the conservative nature of Claimant's treatment, the lack of evidence of side effects which would impact Claimant's ability to perform her past relevant work, and her broad range of self-reported daily activities.

The ALJ considered Claimant's migraines and did not fail to follow any "slight abonormality" rule based on SSR 96-3p. (Pl.'s Br. at 5.) The ALJ found that Claimant complained of headaches, but when she was compliant with her prescribed medications, her headaches were well controlled. (Tr. at 20.)

There was no evidence of record after August 20, 1997 through June 30, 2000, that Claimant sought any mental health treatment. The record shows that claimant did not have treatment records for a gap of time from 1998-2004. (Tr. at 128-319.) Claimant testified about the "missing records". (Tr. at 326-27.) The ALJ was present during the testimony and considered her testimony and that of her representative regarding the "lost" treatment records. (Id.) The undersigned also notes that the Bureau of Disability Determination wrote to John Hopkins Hospital's Medical Records Division on July 14, 2005 requesting Claimant's records from "all

21

1995 to present," the letter contains the notation "no encounters for this patient" at the bottom of the page. (Tr. at 128.)

With respect to Claimant's argument that the ALJ wrongfully discredited Claimant's credibility and failed to consider the "combined effects" of Claimant's impairments, the court proposes that the presiding District Judge **FIND** that the ALJ properly weighed Claimant's credibility and properly considered the "combined effects" of her impairments, in keeping with the applicable regulations, case law, and social security ruling ("SSR") and that his findings are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ did not err in concluding that there was no evidence of record after August 20, 1997 through June 30, 2000, that Claimant sought any mental health treatment. As previously noted, it is Claimant's burden of proof to produce evidence of disability by the date of last insured. 42 U.S.C. § 423(d)(5). See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).

SSR 83-20 Medical Expert Clarification of Impairment

Claimant next argues that the ALJ failed to follow "SSR 83-20, by not obtaining evidence from a medical expert to clarify the nature and severity of the claimant's impairment...If the ALJ was uncertain of whether the claimant's disability continued throughout the time period in question, he should have called a medical expert

regarding the impairment." (Pl.'s Br. at 5.)

Social Security Ruling ("SSR") 83-20's purpose is "to state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act ...." SSR 83-20, 1983 WL 31249, *1 (1983). SSR 83-20 directs that "[i]n disabilities of a nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case." Id. at *2.

Regarding medical and other evidence in particular, SSR 83-20 directs that

> [m]edical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination. Reports from all medical sources (e.g., physicians, hospitals, and government agencies) which bear upon the onset date should be obtained to assist in determining when the impairment(s) became disabling.
>
> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available.  In such cases, it will be necessary to infer the onset date from the medical and other evidence that describes the history and symptomatology of the disease process.
>
>                                 \* \* \*
>
> In determining the date of onset of disability, the date

23

alleged by the individual should be used if it is
consistent with all the evidence available. When the
medical or work evidence is not consistent with the
allegation, additional development may be needed to
reconcile the discrepancy. However, the established onset
date must be fixed based on the facts and can never be
inconsistent with the medical evidence of record.

Id.

Thus, SSR 83-20 provides that

[i]n some cases, it may be possible, based on the medical
evidence to reasonably infer that the onset of a
disabling impairment(s) occurred some time prior to the
date of the first recorded medical examination, e.g., the
date the claimant stopped working. How long the disease
may be determined to have existed at a disabling level of
severity depends on an informed judgment of the facts in
the particular case. This judgment, however, must have a
legitimate medical basis. At the hearing, the
administrative law judge (ALJ) should call on the
services of a medical advisor when onset must be
inferred. If there is information in the file indicating
that additional medical evidence concerning onset is
available, such evidence should be secured before
inferences are made.

If reasonable inferences about the progression of the
impairment cannot be made on the basis of the evidence in
file and additional relevant medical evidence is not
available, it may be necessary to explore other sources
of documentation. Information may be obtained from family
members, friends, and former employers to ascertain why
medical evidence is not available for the pertinent
period and to furnish additional evidence regarding the
course of the individual's condition.

Id. at *3.

    In Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995), our Court

of Appeals indicated that SSR 83-20's "language does not expressly

mandate that the ALJ consult a medical advisor in every case where

the onset of disability must be inferred.  Nevertheless, if the

24

evidence of onset is ambiguous, the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling requires." In <u>Bailey</u>, the ALJ, "'[g]iving the claimant the benefit of any doubt,'" set the claimant's onset date six months prior to when she underwent consultative examinations. <u>Id.</u> at 78 (quoting ALJ's decision). Claimant filed a request for review with the Appeals Council and submitted additional evidence suggesting she was disabled even earlier than the ALJ concluded. <u>Id.</u> In <u>Bailey</u>, the Fourth Circuit reasoned that "[a]lthough the ALJ found that numerous ailments conspired to render [the claimant] permanently unable to work, the date on which the synergy reached disabling severity remains an enigma." <u>Id.</u> at 79. As a result, "the ALJ did not have the discretion to forgo consultation with a medical advisor." <u>Id.</u>

The court proposes that the presiding District Judge **FIND** that substantial evidence supports the ALJ's decision not to obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment, as suggested by Claimant. Contrary to Claimant's assertions, the ALJ was not uncertain of whether the claimant's disability continued throughout the time period in question. (Pl.'s Br. at 5.) He made a clear finding that "the claimant was under a disability...from August 15, 1995 through August 20, 1997... The claimant has not developed any new impairment or impairments since August 21, 1997...through June 30,

2000, her date last insured for disability purposes... Medical improvement occurred as of August 21, 1997." (Tr. at 23.)

<u>Weighing Expert Opinions</u>

Claimant next argues that the ALJ failed to give proper weight to the opinions of the reviewing state agency psychologist Alice Chamby and examining psychologist John R. Atkinson. (Pl.'s Br. at 7-8.) Specifically, Claimant asserts:

> The ALJ erred in ignoring the opinion of Mr. Atkinson for the same reason that he erred in ignoring the state agent's opinion; the opinion should have at least been considered when determining if the claimant's impairments continued through the lack of treatment records. Both Mrs. Atkinson's and the state agent's opinions, as well as the record as a whole, support the argument that the claimant's mental impairments continued the entire period in question. The claimant was hospitalized in both 1995 and 1996, continued to suffer anxiety, depression, and headaches in the years that followed, and consistently sought treatment. The claimant was disabled beginning August 15, 2007 (sic), and remained disabled throughout the entire time period in question.

(Pl.'s Br. at 8.)

The Commissioner responds that the ALJ Decision is supported by substantial evidence because the opinions of the psychologists were offered five or more years after Claimant's date of last insured. (Def.'s Br. at 7-10.) Specifically, the Commissioner asserts:

> The fact that an agency psychologist opined that Plaintiff met Listing 12.06 in 2005 is not dispositive of Plaintiff's condition from August 1997 through June 30, 2000, five to seven years earlier (Tr. 252). The state agency medical consultant did not indicate on the Psychiatric Technique Review Form the clinical findings of record that would support her opinion. The state

agency psychologist restricted her opinion from February 2, 2005, to the date she completed the PRTF form on August 29, 2005, She did not opine as to any earlier onset (Tr. 252).

Moreover, the report of examination by psychologist John Atkinson, M.A., obtained by Plaintiff's attorney in February 2007, is also not dispositive of Plaintiff's ability ten years after the ALJ found that she had improved, and seven years after her date last insured (Tr. 296-311).    The ALJ correctly noted that the psychologist's opinion after examining Plaintiff on one occasion was not based on his treatment or any other contemporaneous treatment records between August 1997 and June 30, 2000.

(Def.'s Br. at 9-10.)

The ALJ made these findings about the opinion evidence from

the reviewing state agency psychologists and psychologist Atkinson:

As for the opinion evidence, on August 29, 2005, the reviewing state agency psychologists who reviewed the medical evidence at the initial determination level determined that the claimant's mental impairment was at the severity to meet the criteria of Section 12.06 of the listings of impairments.    The reviewing psychologist determined that the claimant would have marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace.   However, the evaluator assessed the claimant for the period February 1, 2005 through the present (Exhibit 10-F).    Therefore, the undersigned rejects this opinion, because it is a determination relating to the period after the claimant's date last insured of June 30, 2000 (SSR 96-6p)...

In terms of the opinion evidence, on February 28, 2007, John R. Atkinson, Jr., M.A., performed a psychological evaluation upon the request of the claimant's attorney. Mr. Atkins diagnosed the claimant with a mood disorder, NOS and anxiety disorder, NOS.   The claimant reported current symptoms that did not relate to the period in question.   Mr. Atkinson completed a mental assessment form wherein he opined that the claimant would have a marked (ability to function is severely limited but not precluded) ability to make occupational, performance, and

27

social adjustments.  Mr. Atkinson rated the claimant's GAF at 45, indicative of serious symptoms (Exhibit 17-F).  However, Mr. Atkins stated that this rating applied to the <u>current and past year</u>, which is not during the period in question.  Therefore, the undersigned rejects the opinion of Mr. Atkinson that the claimant's mental condition was severe during the period August 21, 1997 through June 30, 2000, her date last insured, because he based his opinion on the claimant's subjective complaints and not the medical evidence of record.

(Tr. at 22, 26.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 404.1527(d) (2006).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  <u>Id.</u> § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner.  Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  Section 404.1527(d)(2)(I) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given.  Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 404.1527(d)(3), (4), and (5) add

28

the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The court proposes that the presiding District Judge **FIND** that substantial evidence supports the ALJ's weighing of the opinions of the psychologists Chamby and Atkinson.  In a Psychiatric Review Technique Form dated August 29, 2005, Ms. Chamby assessed Claimant for the period "February 1, 2005 to present (August 29, 2005)," she found a Listing 12.06 impairment.   (Tr. at 252-65.) The ALJ properly rejected this opinion because it was a determination relating to the period after the claimant's date last insured of June 30, 2000. (Tr. at 22.)  Furthermore, in a second Psychiatric Review Technique Form dated August 29, 2005, Ms. Chamby assessed Claimant for the period "August 1, 1995 to January 31, 2005" and concluded she had "insufficient evidence" to make a determination regarding Claimant's disability.  (Tr. at 268-81.) Regarding Mr. Atkins' evaluation, the ALJ correctly pointed out that his opinion of Claimant's "serious to major impairment" covered only "the current and past year," which is not during the period in question. (Tr. at 304.)  Therefore, the ALJ properly rejected this opinion as well because Mr. Atkinson's opinion that Claimant's mental

29

condition was severe during the period August 21, 1997 through June 30, 2000, her date last insured, was based on Claimant's subjective complaints and not the medical evidence of record.   (Tr. at 26.)

The conclusions drawn by the ALJ are reasonable, and the court can find no material misstatement by the ALJ in his findings. If Claimant's condition deteriorated after her date last insured, a remedy may exist in filing for supplemental security income benefits, where there is no date last insured requirement.  See 42 U. S. C. §§ 1381-1383f.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may

30

be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

___May 25, 2010___
        Date

Mary E. Stanley
United States Magistrate Judge

31